## J. H. STEPHENS v. VINCENCE MOTL.

### No. 7162.

1. **Vendor with Lien Can Not Maintain Trespass to Try Title.**—In an action of trespass to try title the petition must state that the plaintiff was in possession when the right of action accrued, or when ousted, or that he was entitled to such possession. A vendor retaining a lien, the purchase money not being due, can not maintain the action. His defeat in such action does not affect the title of his vendee.

2. **Vendor's Right to the Land Sold by Him.** — As the vendee may perfect his title by payment of the purchase money and being in possession, the right of the vendor is as of a mortgagee not in possession.

3. **Boundaries — Charge Approved.** — "If the testimony fails to satisfy your minds as to the whereabouts or true locality of the north line of the Woodford survey by lines actually run and marked, or by established corners appearing upon the ground, or by enough of these to reasonably identify the line, then you will see if you can locate the same by reference to other calls in the field notes of the Woodford survey as set out in the patent; being governed by rules hereinbefore given you in charge— that is, that generally natural objects are the highest, and course and distance the lowest grades. Yet if upon looking to the calls in the patent and applying them to the land in dispute and considering all the surrounding and connecting circumstances you are satisfied that the calls for course and distance from established corners show more satisfactorily where the true north line is, then you must establish the line according to course and distance." This is an accurate statement of the law.

4. **Charge Defective.** — Not having asked a charge submitting as a defense an agreement between the parties touching lines, made in an action of forcible entry and detainer, on appeal the omission in the charge is not ground for reversal.

5. **Boundaries—Facts.**—See evidence held insufficient to sustain a verdict as to the locality of the north line of the Woodford survey, the matter in dispute.

APPEAL from Bell. Tried below before Hon. WM. A. BLACKBURN.

This action was brought as a suit of trespass to try title, but the question is one of boundary. J. H. Stephens, the appellant, claims

the land as a portion of the Stone league on the north, and the appellee Motl claims it as a portion of the Woodford league on the south.

Peter G. and Ed. T. Rucker are the immediate grantors of the appellee. They sold him 200 acres of land by metes and bounds, as a part of the Woodford league, on September 1, 1891, by a general warranty deed, in consideration of $200 cash and $200 in each of five installments, evidenced by the promissory notes of said Motl, to be paid January 1, 1882, and annually after that time, to secure which a vendor's lien was reserved on the land in the deed. E. T. Rucker transferred his interest in the notes to P. G. Rucker. Appellant is the immediate vendee of one J. C. W. Midkiff, who conveyed the land to Stephens on January 2, 1886, as a part of the Stone league. The latter brought a suit of forcible entry and detainer on March 11, 1886, against the appellee Vincence Motl and his brother Frank Motl, in Justice Court Precinct No. 5, Bell County. Frank Motl was claiming a portion of the land claimed by Stephens lying west of that claimed by his brother. This suit resulted in a judgment for Stephens in accordance with the following agreement:

"*No. 603. J. H. Stephens v. Frank Motl and V. Motl*—Suit of forcible entry pending before J. J. Lowry, J. P. Precinct No. 5, Bell County, Texas.—The parties plaintiffs and defendants to the above numbered and entitled cause as settlement of this suit do hereby agree and contract as follows: Said defendants do relinquish all rights, possession, and interest to the land in controversy to plaintiff, and agree to deliver the possession thereof to him and pay all costs of this suit, and that the judgment of this court be made and entered according to this agreement. It is understood and agreed, however, that said defendants shall have the privilege of removing the posts and wire fence by them placed on said land within a reasonable time, and also have the right to remove from said land a schoolhouse built on the eastern part thereof. It is understood, however, that the road closed by said fence is to be opened by said defendants at once and without delay, and judgment is to be entered of this date, March 23, 1886.

[Signed]                                        "J. H. STEPHENS, Plaintiff.
                                                "FRANK MOTL, ⎫ Defendants.
                                                "VINCE MOTL, ⎭

"Filed March 23, 1886.                          "J. J. LOWRY, J. P."

In accordance with said agreement the Motls removed their fence off the land and paid the costs of suit.

Appellee is a married man, and was occupying the land as a homestead when the settlement was made.

The following plat will show the location of the leagues and the land in controversy:

The dotted line in the south part of the Stone league represents the north line of the Woodford league as claimed by plaintiff. Its course is south 74 degrees east. The solid common line between the Woodford and Stone leagues running south 71 degrees east, is the south line of the Stone, and true north line of the Woodford, as claimed by defendant.

The case was tried by a jury on July 11, 1889, and judgment was rendered for the plaintiff upon the following verdict: "We the jury find for the plaintiff, that the land in dispute lies in the William Woodford survey."

[This statement accompanied the opinion.]

*Harris & Saunders*, for appellant.—1. If Rucker, holding the superior title to his vendor Vincence Motl, at the special request of Motl instituted his action of trespass to try title against Midkiff in said suit No. 1588, for the purpose of settling the title to the disputed strip of land and to recover it for his vendor Motl and place him in possession, Midkiff then being in possession of it; and on a trial of the issues involved in a court of competent jurisdiction Midkiff recovered the land from Rucker, and at the time of the trial and judgment in said suit Motl still owed Rucker the purchase money for said land, and if the judgment in said suit No. 1588 was never appealed from nor set aside, but is still in force, and if afterward Motl took possession of the land and Stephens brought suit of forcible entry and detainer to get possession of the land from Motl, which suit was settled by Motl abandoning his possession under an agreement with Stephens, which agreement was made the judgment of the court, when Stephens resumed possession of the land, then the question of title and right to the possession of the land in controversy are res judicata so far as Rucker and Motl are concerned, and Motl is forever estopped from bringing any further action thereon. Bank v. Hazard, 30 Fed. Rep., 484; Plumb v. Crane, 8 Sup. Ct. Rep., 216; Kalb v. Swan, 13 Atl. Rep., 379; Herm. on Estop., sec. 587, and authorities there cited; Weathered v. Mays, 4 Texas, 387; Foster v. Wells, 4 Texas, 101; Bryan v. Bridge, 10 Texas, 149; Crane v. Blum, 56 Texas, 325.

2. As Rucker expressly retained the vendor's lien for the payment of the purchase money in his sale to Motl, the contract became executory and the superior title was in Rucker at the time he sued Midkiff. He was therefore the proper party to bring the suit, and having done so on the request and for the benefit of Motl, the judgment in that suit on the matters therein litigated and determined is as binding on his vendee Motl as if he had been named as a party in that suit. McKelvain v. Allen, 58 Texas, 383; Lundy v. Pierson and Wife, 67 Texas, 233.

3.   All matters of law must be determined by the court, and only matters of fact by the jury.   It is the duty of the court to particularly and clearly instruct the jury as to the law arising on any particular phase of the case should they find from the evidence any such particular phase to arise, and it is gross error in the court to fail or refuse to do so and impose on the jury the burden of improvising for themselves the law arising on any material point of the evidence.   Chinoweth v. Lessee, 3 Peters, 92; Ayers v. Harris, 64 Texas, 296.

Counsel also cited Jones v. Burgett, 46 Texas, 285; Booth v. Upshur, 26 Texas, 64; Booth v. Strippleman, 26 Texas, 436; Fowler v. Walker, 25 Texas, 700; Railway v. Underwood, 64 Texas, 463; Chandler v. Meckling, 22 Texas, 36; Rowe v. Collier, 25 Texas Supp., 252; Moore v. Anderson, 30 Texas, 224; McAfee v. Robertson, 41 Texas, 355.

*Monteith & Furman,* for appellee.—1.  Rucker was not authorized by law to institute suit of trespass to try title for his vendee Motl against Midkiff in said cause No. 1588, when his vendee held a deed from him, which was duly recorded, at the time of instituting said suit. Vincence Motl was in the actual possession of part of said land and in constructive possession of the remainder as described in said deed. Rev. Stat., arts. 4786, 4788, 4790, 4808; Browning v. Atkinson, 46 Texas, 605, 610; Hooper v. Hall, 30 Texas, 154; Moser v. Hussey, 67 Texas, 457.

Judgment against a vendor does not conclude his vendee in possession with deed recorded.   The State v. Rhomberg, 69 Texas, 220; Peters v. Clements, 46 Texas, 114; Wortham v. Boyd, 66 Texas, 404, 405; Robinson v. Black, 56 Texas, 218; Ewell v. Anderson, 49 Texas, 704; Lockhart v. Ward, Dewy & Co., 45 Texas, 228; Ufford v. Wells, 52 Texas, 619.

2.   Even if Rucker retained a vendor's lien for the payment of the purchase money in his sale to Motl, and the contract became executory and the superior title was in Rucker at the time he sued Midkiff, yet Rucker was not the proper party to bring the suit.   He had not cancelled Motl's title to the land or annulled the same in any way; his possession had not been trespassed upon; he was not entitled to judgment for the possession of the premises, Motl not having made default in the payment of the purchase money notes; he was not entitled to a judgment either against Motl or Midkiff for the title of the premises, and could not sustain a suit for either title or possession, upon it being made to appear to the court that he (Rucker) had conveyed to Motl, and Motl was in possession under said conveyance.   Bigham v. McDowell, 69 Texas, 100; Barclay v. Lessee, 6 Peters, 509, 510; Stroud v. Springfield, 28 Texas, 666; Hrouska v. Jauld, 66 Wis., 253; Christ v. Thompson (Pa.), 2 Cent. Rep., 523; Curtis v. Aaronson (N. J.), 6 Cent. Rep., 87, 90.

GARRETT, Presiding Judge, *Section B.*—The controversy in this suit arose over the disputed location of the northwest corner of the William Woodford league. Appellant seeks a reversal of the judgment of the court below upon the following grounds, which have been assigned as error:

1. The refusal of the court to admit in evidence the record of a suit involving the title to the land in controversy, brought by P. G. Rucker against J. C. W. Midkiff.

2. The charge of the court with reference to the circumstances under which course and distance should be resorted to in establishing the north boundary of the Woodford league; and in the submission of issues to the jury. Also in failing to instruct the jury as to the settlement between the parties in the suit in the Justice Court.

3. That the verdict is contrary to the law and the charge of the court in failing to fix the boundary; and that it decides nothing, but leaves the matter still in dispute and unsettled.

4. That the verdict is contrary to the evidence, in that the line claimed by the plaintiff as the north line of the Woodford league was marked in 1872, and is not the true line.

A bill of exceptions was saved to the exclusion of the record in the suit of Rucker v. Midkiff. It sets out the petition, answer, and judgment in that suit, from which it appears that after the sale by the Ruckers to appellee, and the transfer of the notes by Ed. T. Rucker to P. G. Rucker, the latter brought an action of trespass to try title against Midkiff for the land sold by him to Motl. This suit was filed November 30, 1882, and was finally tried December 31, 1885, and resulted in a judgment for Midkiff. It is contended that by this judgment the claim of Motl to the land became res adjudicata, because Rucker held the superior title thereto from the fact that the purchase money had not been paid. Notwithstanding the reservation of the vendor's lien in the deed, Motl had the right to the possession of the land under his contract of purchase, and title was vested in him, subject only to be defeated by rescission for failure to pay the purchase money; and it might become perfect on payment of the notes. He was then the proper party to bring suit for the land. Rucker did not have the right of possession. In an action of trespass to try title the petition must state that the plaintiff was in possession of the land when the right of action accrued or when ousted, or that he was entitled to such possession. Rev. Stats., art. 4786. Although he held the superior title as between himself and his vendee, Rucker stood in the relation of a mortgagee of the land out of possession, and not entitled to possession until default on part of the vendee and a rescission by him of the contract, or a foreclosure. We refer to the following cases as bearing upon the point: Webster v. Mann, 52 Texas, 416;

Ann Berta Lodge v. Leverton, 42 Texas, 23; Fisk v. Miller, 13 Texas, 224; Edrington v. Newland, 57 Texas, 627; also, 61 Texas, 334.

The case of Breedlove v. Kramer (3 S. W. Rep., 561), cited by appellant, was decided on a quite different state of facts. In that case there was in the first place an agreement between Wilkins, the vendor of the land, Breedlove, the holder of the notes, and Kramer, the grantee in the deed and the maker of the notes, that Wilkins should bring the suit against the heirs of R. D. Evans in his own name to clear up the title. Also it appeared that R. D. Evans had the power to convey the land to Wilkins. It was held that the recovery by Wilkins inured to the benefit of Kramer. Motl was not concluded by the judgment in the suit of Rucker v. Midkiff, and there was no error in excluding the record.

Taken as a whole, the charge of the court was full, clear, and explicit as to the rules of law which should control the jury in ascertaining the true location of the north boundary line of the Woodford league, and we find no error in it for which the case should be reversed.

The failure of the court to instruct the jury with reference to the agreement of settlement in the Justice Court should have been corrected by a special charge at the request of the defendant, and we do not think that it was error on the part of the court for which the judgment should be reversed to fail to so instruct the jury.

Was the verdict contrary to the evidence? From an inspection of the field notes as set out in the petition and carried into the judgment it will be seen at once that there is a misrecital or clerical error in the call for the beginning corner. The call is, "beginning S. 71 degrees E. 830 varas from original N. E. corner of Woodford league." "N. W." should have been written for "N. E." We think the mistake may be treated as a mere clerical error, and that the amendment readily suggests itself. The land in controversy is embraced in a strip extending east and west 830 varas, and is about 148 varas wide. It lies between a line on the south claimed by Stephens to be the line between the Stone and Woodford leagues, and a line on the north which is claimed by appellee Motl to be said league line. Several leagues, including the Stone and Woodford, were located contiguous to each other by Moses Cummins, a colonial surveyor, in November, 1834, the time extending from November 3 to December 2; and the evidence shows very conclusively that they were surveyed on a common base line, some lying south and others north of the line, which ran in a course south 71 degrees east. The Duggins league, or No. 1 as it was called, was surveyed first; and its southwest corner was fixed by a call of "6800 varas north 19 degrees east from the northeast corner of the Michael Reed league," which is easily identified. In running out the Duggins league and the Hood and Stone north of it the north boundary

line is clearly established. Each successive survey calls for the other in such a manner as to leave no doubt of the intention of the surveyor to make a continuous straight base line. The field notes of the Woodford call for the northeast corner of the Duggins, and a continuation of the north line of the Duggins was intended to be the north line of the Woodford. But some of the witnesses identify an elm tree about 135 yards north of the course of the Duggins line as the northeast corner of the Duggins and northwest corner of the Woodford. If a line should be run from the northeast corner of the Woodford as claimed by the plaintiff to the southwest corner of the Stone in the Duggins north line, the course would be north 74 degrees west, or a reverse call of south 74 degrees east instead of south 71 degrees east, as the call is for the north line of the Woodford. If we adhere to the base line as indicated by all the evidence the defendant's claim is right. In order to sustain plaintiff's contention, we must leave it at some indefinite point and establish the northeast corner of the Duggins, which is the northwest corner of the Woodford, at a point some distance north of it. Now, as to these two corners. The call in the Duggins field notes is, "an elm fifteen inches in diameter bears south 88 degrees east 21 varas, and a hackberry ten inches in diameter bears north 86 degrees west 28 varas." The bearing claimed by plaintiff is "an elm marked H in a small prairie." This is discredited by the witnesses Lagrone and Flint as a tree marked by them as a guide to the corner. All agree that there is an elm 135 varas south of the corner as claimed by the plaintiff, marked with old colony marks. Running the west line of the Woodford by course and distance both trees are near the continuation of the line; but distance gives out before the first is reached, and the latter is over 200 varas beyond, the surveys being square leagues whose sides are 5000 varas, and the distance to the "elm marked H," etc., is 5240 varas. No witness undertakes to identify the corner positively. There is even more doubt about the northwest corner of the Woodford. Without going over the testimony of the several witnesses in detail, it is sufficient to say that we are clearly of the opinion that the plaintiff failed to sustain the line as claimed by him.

In view of another trial of the case, we think it would be proper to submit to the jury the question of an agreed boundary as indicated in the settlement of the forcible entry and detainer suit. The description of the premises in the complaint filed by Stephens calls for the beginning point at a place "1000 varas east of the southwest corner of the Thornton Stone league and on the south line thereof, running thence," etc. If this description is shown to include the land in controversy, and there is no dispute about the settlement, the plaintiff might be concluded thereby, although it was in fact his homestead, and the

agreement of settlement was not signed and acknowledged by his wife. Levy v. Màddox, 81 Texas, 210.

Since the case will be reversed and remanded, we do not think it is necessary to consider whether or not the verdict was sufficient to determine the issue as to boundary; further error, if any, is not likely to occur on another trial.

We are of the opinion that the judgment of the court below should be reversed and the cause remanded for another trial.

*Reversed and remanded.*