LIVERPOOL AND LONDON AND GLOBE INSURANCE COMPANY
v. WILLIAM RICKER.

No. 717.

1. Fire Insurance Policy — Ownership of Property — Failure to Disclose Vendor's Lien.—The fact that the assured in a fire insurance policy failed to disclose that there were unpaid purchase money notes outstanding, and that the vendor's lien was reserved to secure their payment, will not defeat his recovery upon such policy on the ground that he was not the "entire, sole, and unconditional owner" of the property.

2. Insurance — Refusal to Pay Loss — Waiver of Proofs of Loss.—Where the evidence showed that the insurance company refused to pay the loss, the court properly held that the proofs of loss had been waived.

3. Intervention—Insurance Policy, Interest In.—A party to whom an interest in an insurance policy had been transferred after suit brought thereon had a right to intervene in such suit.

APPEAL from Navarro.    Tried below before Hon. RUFUS HARDY.

*McKie & Autry,* for appellant.—1.  A vendee of real estate who owes unpaid purchase money notes which are secured by a vendor's lien upon the property expressly reserved in the deed, and in the notes, is not the "entire, sole, and unconditional" owner thereof.  Such facts where they exist are "material to the risk" under a fire insurance policy on such property, and a failure to disclose them is such an "omission" as will defeat recovery upon the policy where the contract expressly so provides.  Ins. Co. v. Camp, 64 Texas, 528; Id., 71 Texas, 506; Ransom v. Brown, 63 Texas, 189; Burgess v. Millican, 50 Texas, 397; Hale v. Baker, 60 Texas, 217; Roosevelt v. Davis, 49 Texas, 463; McKilrain v. Allen, 58 Texas, 383; Dunlap v. Wright, 11 Texas, 597; Pitschki v. Anderson, 49 Texas, 3; Baker v. Ramey, 27 Texas, 59; Peters v. Clements, 46 Texas, 123; Masterson v. Cohen, 46 Texas, 523; Rogers v. Blum, 66 Texas, 6; Ufford v. Wells, 52 Texas, 617; Stone v. Boon, 73 Texas, 555; Fire Assn. v. Flournoy, 84 Texas, 632.

2.  The court erred in its conclusion of law, to the effect, that "the compliance with stipulations as to proofs of loss is waived by absolute refusal to pay."  Ins. Co. v. Clancy, 71 Texas, 10; Ins. Co. v. Mattingly, 77 Texas, 164; Beatty v. Ins. Co., 66 Pa. St., 7; same case, 5 Am. Rep., 319; May on Ins., sec. 469.

*Ballew & Ballew & Beeson,* for appellee.—1.  Concealment of any facts by the assured when no inquiry is made about them, will not vitiate a policy of fire insurance.  Ins. Co. v. Harmer, 2 Ohio St., 425; 59 Am. Dec., 684; Campbell v. Ins. Co., 73 Wis., 100; Ins. Co. v. Coombs, 20 S. W. Rep., 900; Clark v. Ins. Co., 8 How., 235; Gates v. Ins. Co., 55 Am. Dec., 360; Hall v. Ins. Co., 18 L. A. R., 135; Costner v. Ins. Co., 46 Mich., 15; Guest v. Ins. Co., 66 Mich., 98; O'Brien v. Ins. Co., 52 Mich., 131; Tiefenthal v. Ins. Co., 53 Mich., 306.

2. Where the insurance company bases its refusal to pay upon other grounds than sufficiency of proofs of loss, it waives its right to object to sufficiency of proofs of loss.   77 Texas, 162; 63 Texas, 641; 71 Texas, 287; 56 Texas, 366, 565; Bennett v. Ins. Co., 106 N. Y., 243; Fisher v. Ins. Co., 33 Fed. Rep.

RAINEY, ASSOCIATE JUSTICE.—Suit brought by William Ricker against the insurance company to recover the amount stated in the insurance policy sued on, part of the property therein described having been destroyed by fire.   Cosnahan intervened, claiming an equitable interest in the policy.   Judgment for Ricker and Cosnahan for the amount of property destroyed, from which this appeal was taken.

*Conclusions of Fact.*—The property covered by the policy in suit was purchased by C. P. Ricker from Cosnahan, the terms being $250 cash and three notes each for $250, given by C. P. Ricker to Cosnahan. The deed recited the notes, and a lien was expressly reserved therein to secure payment of said notes.   At the time of the purchase there was a policy of insurance on the property, issued by appellant company, in favor of Cosnahan—"loss payable to Texas Loan Agency, as its interest might appear."   This policy was transferred to C. P. Ricker by Cosnahan, the agent of the insurance company consenting. Upon the expiration of this policy the agent solicited C. P. Ricker to insure with appellant company.   The agent "knew the property and did not go to see it, but wrote out the policy for the amount stated; sent the policy to C. P. Ricker's place of business; Ricker paid the premium to the agent and accepted the policy.   No written application was made; no questions were asked C. P. Ricker about the title, mortgaged liens, or incumbrances on the property, nor did said Ricker make any representations or statements whatever in relation thereto. The agent knew that Ricker had bought the property from Cosnahan."

The policy in suit was issued March 23, 1891, by appellant company in favor of C. P. Ricker, insuring against loss by fire to the extent of $1340—covering dwelling $800, household goods $470, and barn $70.   Said policy provided, that same should be void if there was "any omission to make known every fact material to the risk." It also contained the following clause:   "If the interest of the assured in the property be any other than the entire, unconditional, and sole ownership of the property, for the use and benefit of the assured, or if the building stand on leased ground, it must be so represented to the company and so expressed in the written part of this policy, otherwise the policy shall be void."   The above are the only provisions that relate to the issues raised.

On the night of September 4, 1891, the dwelling and household goods were totally destroyed by fire.   The household goods destroyed were of the value of $713.   Immediately after the fire appellant's

agents were notified thereof, and soon thereafter proofs of loss were made out and sent to appellant at New Orleans, La. The receipt of same was acknowledged through a letter dated at New Orleans, September 17, 1891, the letter also stating, "We have forwarded same to Captain Groves, who has this matter under adjustment. [Signed] Clarence F. Law, Assistant Secretary." Groves objected to first proof of loss; and amended proof of loss was sent, which seems not to have been acceptable. Finally, after considerable correspondence by letter between Groves and plaintiff's attorney, M. M. Montgomery, Groves refused to pay the loss on grounds other than for want of proofs of loss.

At the time of the loss one of the notes for $250 had matured, but $147 had been paid on it, and the time of payment on balance had been extended until November 1, 1891. The other notes were not due. After the fire C. P. Ricker had a settlement with Cosnahan by which the outstanding notes were paid off and discharged, and at the time of suit there was no outstanding lien on the property. On September 13, 1891, C. P. Ricker and wife, for value, transferred the policy of insurance to plaintiff, William Ricker. Intervenor Cosnahan had an equitable interest in the policy of $300, which plaintiff admitted.

*Opinion.*—The first proposition relied upon by appellant for reversal of the judgment is: "A vendee of real estate who owes unpaid purchase money notes which are secured by a vendor's lien upon the property expressly reserved in the deed and in the notes, is not the 'entire, sole, and unconditional' owner thereof. Such facts where they exist are 'material to the risk' under a fire insurance policy on such property, and a failure to disclose them is such an 'omission' as will defeat recovery upon the policy where the contract expressly so provides."

As early as the case of Dunlap v. Wright, 11 Texas, 597, our Supreme Court held, that a vendor selling land and taking a mortgage to secure the purchase money, held the superior title to the land until the purchase money was paid. This doctrine has been applied to cases where the lien was expressly reserved in the deed, and when default is made by the vendee in the payment of the purchase money, the vendor can sue to foreclose his lien, or he can elect to rescind the contract and recover the land. Cases arise, however, when the enforcement of the latter remedy would be inequitable to the vendee, in which case the vendor must resort to proceedings to foreclose his lien upon the land to obtain relief. The right to rescind such contracts, when not defeated by equities, has long been the settled doctrine of this State; yet "the principle upon which the ruling is based is not at all clear." The doctrine is generally supported on the theory that such a contract is executory, and as said by Judge Henry in Stitzle v. Evans, 74 Texas, 598, the use of the word *executory* in some of the decisions "has given rise to some confusion of ideas upon the law of this subject." The

tendency of the late decisions "seems to point to the ultimate aban-
donment of this rule in its full vigor, or at least to a modification
thereof." McCamly v. Waterhouse, 80 Texas, 340; Stitzle v. Evans,
74 Texas, 598; Huffman v. Mulkey, 78 Texas, 559.

In the last named case, Mr. Stayton, Chief Justice, in discussing the
cases of Kennedy v. Embry, 72 Texas, 389, and Thompson v. Westbrook,
56 Texas, 265, wherein this doctrine is applied, said: "In these cases
the facts existed which entitle the vendors to rescind, but the cases
push the application of the rules growing out of the holding that such
contracts are executory in character to the utmost verge of propriety
or reason; and the writer doubts the correctness of the holding, even
in such cases, that rescission can in any case in which a deed has passed
be made otherwise than by a writing or some decree of a proper tribu-
nal, if for no other reason, because it makes title to land to rest largely
in parol, when the purpose of the statutes of fraud was to require such
right to be evidenced in a different manner."

In Stephens v. Motl, 82 Texas, 81, the vendor's relation to the land
thus sold was likened unto a mortgagee out of possession. In all the
cases where this question has been discussed it was in connection with
rights existing between the vendor and vendee, the basis being the
principle that the vendee should not reap the benefit of the land with-
out paying therefor, and the right to rescind is merely a remedy given
the vendor to protect him against loss.

With these remarks, we will proceed to consider whether the ven-
dee under such a contract is the absolute owner of the land; or in
other words, has the vendor such an interest as prohibits the vendee
from being the "entire, sole, and unconditional" owner thereof as re-
quired by the terms of the insurance policy? The contention is, that as
our Supreme Court has held that the superior title remains in the ven-
dor, the vendee is not an absolute owner. It seems to us clear, that in
using the term "superior title" the court did not intend to give to it
its full force and signification, for we find, that in the same opinions
where such expression is used, the court holds that the vendor has no
authority over the land whatever until default is made by the vendee
in the payment of the purchase money, and even then if part of the
purchase price is paid, and it would be inequitable for the vendor to
rescind the contract, the law will not permit him to do so. If the
property is damaged or destroyed the vendee is still bound for the pur-
chase money remaining unpaid, and the loss of the property falls
*entirely on him.* The vendee by paying the purchase money defeats all
rights of the vendor, and no further act is necessary to free the prop-
erty from the vendor's lien; and the transfer of the purchase money
notes by the vendor defeats the right to rescind, and the lien only ex-
ists. All of this, to our minds, is inconsistent with the idea that the
superior title in its fullness remains with the vendor. "Superior title"
conveys the idea that it is supreme, and does not depend in the least
upon the action of some person other than the holder for its mainte-

nance. In other words, when it exists, it is not in the power of another to defeat it by his conduct—which is the case in this State where the vendor sells land and reserves a lien in the deed.

The meaning of "entire, sole, and unconditional ownership," or similar terms in insurance policies; has been frequently interpreted by the courts; the weight of authority being, that the assured is the "entire, sole, and unconditional" owner of the property insured, notwithstanding there is unpaid purchase money notes outstanding secured by a lien expressly reserved in the deed. Ins. Co. v. Wilgus, 88 Pa. St., 107; Chandler v. Ins. Co., Id., 223; Ins. Co. v. Crockett, 7 Lea (Tenn.), 725; May on Ins., sec. 287c.

It has also been held, that a "party in possession under contract of purchase, conceded to be in force, is the owner in equity, and a statement by him in an application for insurance that he owns the property is not untrue, and can not be considered as a breach of a condition, forfeiting the policy, if the interest of the assured is any other than 'entire, sole, and unconditional' ownership, and is not so represented to the company." Pelton v. Ins. Co., 77 N. Y., 605; Hough v. Ins. Co., 29 Conn., 10; Johannes v. Standard Fire Office, 70 Wis., 196; Duprean v. Ins. Co., 5 L. R. A., 671.

It is also held, that "a representation that an applicant for insurance is the 'owner' of premises to be insured is not false if he is the equitable owner, although he has no legal title." Wainer v. Ins. Co., 11 L. R. A., 598; 153 Mass., 335. We might add other authorities along this line, but deem it unnecessary.

The assured in this case made no representation whatever to the company's agent as to his ownership of the property insured. No inquiry was made of him about its condition, nor did the assured intentionally omit to reveal to the agent its condition. The agent knew that the assured had recently bought the property from Cosnahan, as the policy of insurance on the same property held by Cosnahan at the time C. P. Ricker purchased the property had been transferred to C. P. Ricker by Cosnahan, with the company's agent's consent. At the time of purchase the assured paid $250 cash, and before the fire $147 more was paid. There was no part of the purchase money due at the time of the fire, nor had the assured made any default in the payment of the same. After the fire the assured settled in full with his vendor for the outstanding purchase money notes. When the purchase money is paid, "the seizin will be regarded as having been in the vendee ab initio, or from the date of purchase." Huffman v. Mulkey, 78 Texas, 562; Burgess v. Milliken, 50 Texas, 401.

In the case of Gaylord v. Insurance Company, 40 Missouri, 13, the suit was on an insurance policy with a clause as to ownership similar to the one in suit here. "The plaintiffs insured the property as owner. Their title was a purchase at a sale under the foreclosure of a mortgage in the State of Illinois, by the laws of which State the mortgagor had fifteen months after sale within which to redeem. Before the exe-

cution of the deed to the plaintiffs, the property insured was destroyed by fire, and subsequently the plaintiffs received a deed to the property. Held, that the terms of the policy referred not to the nature of the title, whether legal or equitable, but to the nature of the ownership of the property; and further, that the plaintiffs having subsequently acquired the legal title by the deed, the legal title should relate back and take effect from the inception of the equitable title by the purchase at the sale under the foreclosure, so that the plaintiffs at the time the policy was issued were the owners of the property, holding the legal title in fee "

If this be the true doctrine, then C. P. Ricker's title ripened when he paid off and discharged the lien, and he thereby became the entire, sole, and unconditional owner from the time the deed was made to him, which was before the insurance policy was issued.

Aside from this, however, we think that at the time the contract for insurance was made, [and when the property was destroyed by fire, C. P. Ricker was the entire, sole, and unconditional owner of said property within the meaning of those terms as used in the insurance policy sued on, and the omission of said Ricker to make known to the agent the existence of the vendor's lien does not prevent a recovery.

The case of Guinn v. Insurance Company, decided by this court October 18, 1893, and relied on by appellant in this case, can not be considered as authority on the point at issue in this case, for the reason that the controlling issues in that case and the ones that influenced the action of this court were, (1) the vendor's lien existed upon the property, and the policy required a statement as to incumbrances, which was not given by the assured; (2) *other insurance* greater in amount than that permitted by the policy was secured by the assured, and the company not notified thereof. Neither of these points are relied on in this suit.

There was no error in the court's holding that appellant had waived the furnishing of proofs of loss by appellee, for the evidence fully sustains the court's finding that appellant had refused to pay the loss, thereby waiving any right to require proofs of loss.

An interest in the policy having been transferred by Ricker to Cosnahan after suit brought, gave the latter a right to intervene for the protection of his interest.

The other errors assigned are without merit, and will not be discussed.

The judgment is affirmed.

*Affirmed.*

Delivered March 27, 1895.