Grooms  v.  Rust.

HORATIO GROOMS V. WILLIAM RUST.

The possession of personal property is *prima facie* evidence of title, and will support an action for its recovery against a wrong doer.

In cases of bailment for hire, the question of title is not usually material, as the bailee can not resist the enforcement of the contract by mere proof that the title to the property was not in the bailor at the time of the hiring.

To resist the enforcement of the contract in favor of the bailor, the bailee must further show that the bailor had no right of possession, or such facts as establish a failure of the consideration of the contract.

The law implies an assumpsit by the party using or enjoying personal property, in favor of the owner, or of the party entitled to its possession.

Where, in a suit for the hire of a slave, the plaintiff relies upon the implied assumpsit in favor of the owner or party entitled to the possession, an answer setting up title in the defendant and others to the slave in question presents a valid defence.

Though a deed absolute upon its face may be shown by parol testimony to be intended as a trust; yet the courts will scan such testimony with a strict and scrutinizing eye. It must be sufficient to establish the trust with clearness and certainty, and be in all other respects admissible for the purposes of proof, within the rules laid down by the courts.

Declarations of a grantor in a deed, made several years after its execution and when he had no interest in the property conveyed, are not admissible in disparagement of the title evidenced by the deed.

The rights of a married woman, who was one of the grantees in an absolute deed, cannot be prejudiced by her admissions that a third person had a life estate in the property, when no one has been injured or misled by such admissions.

APPEAL from Travis. Tried below before the Hon. George W. Smith.

Suit by the appellee against the appellant, brought December 21st, 1858.

In his original petition, the plaintiff alleged that he had hired to the defendant, for the years 1855 and 1856, a negro boy named Bob, at the rate of $180 per annum. By an amended petition, filed December 10th, 1859, the plaintiff averred a hiring by the defendant, and that the defendant had the use and service of the

boy Bob during the year 1855 and 1856, which were of the value of $250 per annum.

The defendant excepted, and among his causes of exception assigned that the plaintiff did not aver that he was the owner of the boy Bob in the years 1855 or 1856, or was entitled to the hires of the boy for those years, by virtue of authority from the owner. The exceptions were overruled. The defendant also answered, 1st, with a general denial. 2d and 3rd, denies the hiring specially. 4th, charges that the plaintiff is not the owner of the boy Bob, and therefore has no right to recover his hires. 5th, charges that the plaintiff had no right, title or interest in or to the boy, for the years 1855 and 1856, and alleges that during and long before those years the negro boy belonged to the wife of the defendant and her sisters. 6th, avers that the defendant never hired the negro from the plaintiff or from any one else, but had possession of him in right of his wife, and was not required or expected to pay hire for him. 7th, alleges that in the years 1855 and 1856, the negro in question together with others, was the property of the defendant's wife and her sisters, by virtue of a bill of sale, or deed of gift, herewith exhibited. 8th, charges that this suit was instituted maliciously, &c., to defendant's damage, for which he prays judgment, &c.

The plaintiff excepted to so much of the defendant's answer as set up title in himself and others. Exceptions overruled.

The cause came to trial at the December Term, 1859. No contract of hiring was established by the plaintiff, who proved, however, that the defendant had the use and service of the negro during the years specified, and that previously the plaintiff had had the control and management of the negro. On cross-examination, the plaintiff's witness, Carter, proved the signature of Albert Rust to a deed of gift executed by him, on the 7th of January, 1851, conveying to Margaret Rust, since become the wife of the defendant Grooms, and her five sisters, sundry negroes, among whom was the boy Bob. On re-examination by the plaintiff, this witness testified that, in the year 1855, he heard Albert Rust say that William Rust, the plaintiff, was entitled to the use and service, management and control of the boy Bob and other slaves

mentioned in the deed of gift, during the life time of said William Rust, and that the deed of gift was executed by him, Albert Rust, with that understanding. And the witness further stated that he had heard all the donees in the deed of gift make the same statement, that such was the understanding of all the parties to the deed of gift before and at the time of its execution. To this evidence the defendant objected, but his objections were overruled, and he excepted.

The defendant introduced the deed of gift made by Albert Rust on the 7th of January, 1851, referred to in the evidence of the witness Carter; by which deed the donor, in consideration of natural love and affection and of one dollar, conveyed to Margaret Rust and her sisters by name, the absolute title to several negroes, of whom the boy Bob was one.

There was other evidence on both sides, not necessary to be detailed.

Verdict and judgment in favor of the plaintiff for $180. Motion for a new trial overruled, and appeal by defendant.

*Sneed & Walton*, for the appellant.

*Hancock & West*, for the appellee.

MOORE, J.—The possession of personal property is *prima facie* evidence of title, and will, assuredly, support an action for its recovery against a wrong doer. In cases of bailment for hire, the question of title is not usually a matter of importance; the bailee can not resist an enforcement of the contract merely by proof that the title of the property was not at the time of the hiring in the bailor. To enable him to do so, he must not only shew that the bailor was wanting in title, but also that he had no right to the possession of the property bailed, or such facts as establish a failure of the consideration of the contract sought to be enforced. The law also unquestionably implies an assumpsit in favor of the owner, or the party having the right of possession of its *quantum meruit* from the party who has been in the use or enjoyment of the property.

In this case it is not very clear whether the plaintiff, the appellee in this court, intended by his original and amended petition, to place his right to a recovery upon an express or implied contract, or as is more probable, to present them as alternate grounds for recovery.  If the plaintiff had rested his right to a judgment exclusively upon the hypothesis that the defendant had acquired the possession of the negro from him, or by an express contract of hiring with him, it might be a matter of much question whether the facts alone presented in the defendant's answer, would afford a valid defence to the action.  But the plaintiff did not rely solely upon an express contract of hiring, nor did he establish such an one by the proof adduced upon the trial.  Nor, indeed, was it clearly shown that the negro had been in his possession previous to going into that of the defendant, or that the latter had acquired possession from him.  In so far as the plaintiff placed his right of action upon the implied assumpsit to pay the hire of the negro to the owner, or party entitled thereto, the special answers of the defendant presented a valid defence, and the plaintiff's exceptions to so much thereof as set up title in the defendant and others, was therefore properly overruled.

The only other question that need be noticed, is presented by the bill of exceptions, taken by the defendant to the testimony of the witness Carter.  That a deed absolute upon its face may be shown by parol to be intended as a trust, must be admitted to be settled law in this forum.  But the courts will scan testimony offered for this purpose, with a strict and scrutinizing eye, and if in all respects it is admissible for the purposes of proof within the rules by which the courts are governed upon this subject, it must also be sufficient to establish the trust with clearness and certainty. (Miller v. Thatcher, 9 Tex. R., 482; Mead v. Randolph, 8 Tex. R., 191; McClenney v. Floyd, 10 Tex. R., 159; Cuney v. Dupree, 21 Tex. R., 211.)  The declarations of Albert Rust, the grantor in the deed, upon which the defendant relied to show a want of title, or right of possession in the plaintiff to the negro for whose hire the suit was brought, which the court permitted to be testified to by Carter, were most indubitably upon any principle of law, altogether inadmissible.  They were clearly objectionable as

Grooms v. Rust.

falling under the general exception to which all hearsay evidence is amenable. They were also inadmissible, because made by the grantor in disparagement of the title evidenced by his deed several years after its execution, and at a time that he had no interest in the subject matter. The admissions of the grantees, to which the witness also testified, appear to some extent, at least, to have been likewise inadmissible. The testimony shows that the defendant's wife, who was one of the grantees in the deed from Albert Rust, was at the time of making the admissions upon which the plaintiff relied as proof of his right to a life estate in the negro, a married woman ; and it certainly will not be insisted that her rights could be affected by her bare declarations or admissions, when no one has been in any manner injured thereby, or has acted upon them.

The appellee insists that his possession of the negro entitled him to a recovery. The difficulty in sustaining this view of the case has been indicated by what has been already said. But if it were true, and if, as appellee now maintains, the testimony offered by him to prove his title was unnecessary, and that it was only offered to meet the improper issue, that the refusal of the court to sustain his exceptions to the answer forced upon him, it should not affect the result of the case here. The charge of the court, as well as its action upon the pleadings, made the plaintiff's right to a verdict, as an alternative view of the case, depend upon his *right* to the possession of the negro during the time for which he was claiming his hire from the defendant. If it were admitted that this was erroneous, it can not be said here that the jury may not have been controlled in their finding by it. Nor can we know what might have been their verdict if they had been required to rest it upon the single issue which the appellee now insists should alone have been submitted to them.

The judgment is reversed and the cause remanded.

Reversed and remanded.