## JOHN MARTIN v. E. C. MARR.

Decided March 23, 1901.

1.—State School Lands—Actual Settlement.

See the opinion for facts held to constitute actual settlement by a single man on State school land entitling him thereto as against one who subsequently applied to purchase it from the State.

2.—Same—Mistake as to Boundary Line.

Actual settlement on State school land is not defeated by virtue of the fact that, through mistake, the settler builds his house eighty varas across the line on another tract.

Appeal from Stonewall. Tried below before Hon. P. D. Sanders.

*Featherstone Bros.* and *Theodore Mack,* for appellant.

*H. G. McConnell,* for appellee.

HUNTER, ASSOCIATE JUSTICE.—Appellant brought this suit against appellee on February 26, 1900, in trespass to try title to recover the north quarter of section 144, block D, Houston & Texas Central Railroad survey, set apart to public free schools, situated in Stonewall County. The appelee pleaded not guilty. The case was tried by the court, and judgment was rendered for appellee, and it comes here by appeal on a statement of facts, as well as conclusions of fact and law found by the district judge.

The evidence was sufficient to entitle Martin to recover the land as additional grazing land to his home section No. 80 under his application of March 21, 1899, unless Marr was an actual settler thereon when he made his application to the Commissioner of the General Land Office to purchase it on December 24, 1898. Vanlier had made application to purchase it as an actual settler thereon on November 26, 1897, but his dwelling house was not built on the land, but was placed by mistake some 80 varas from the line on another tract. Marr, who was a single man, bought the land November 10, 1898, from Vanlier, to whom it has been awarded by the Commissioner of the General Land Office, and on that day made out and swore to his application in terms of the law. He was on the land the day he bought it from Vanlier, and on the next day built his camp thereon, and on the 24th day of December, 1898, filed his application in the General Land Office, together with a deed from Vanlier, to be substituted as purchaser of said land in place of Vanlier, and paid thereon the amount due, $156, and his claim as purchaser was in good standing at the time of the trial. His evidence as to his actual settlement on the land is as follows:

"I am defendant in this suit. I live upon the north quarter of section 144, block D, Houston & Texas Central Railroad survey of the State school land, the same being the land in controversy in this suit.

I have lived there ever since I purchased same from W. L. Vanlier, and have never been absent from the land except temporarily since then. I have been absent from the land part of the time for the purpose of earning money to pay for the land and carry on my other business interest and to look after my cattle, which are located in a pasture some five or six miles from the land in controversy, and I have gone to my father's to render him assistance when needed, he being aged and crippled and my mother being old and feeble, they having no help except what they got from me when I would go to see them for the purpose of rendering them assistance. I am a single man, and established a camp upon the land the next day after I traded for the same. I have kept and maintained this camp as my home ever since I bought this land. The camp is constructed by putting posts in the ground and putting poles around the posts about four to the side, thus making a square pen in which I have put a large box constructed for the purpose when I was in the sheep business. In this was grub and cooking utensils. I also had my bedding and working tools with me, consisting of ax, grubbing hoe, plows, and harness. My bedding consisted of several quilts, and I had a wagon sheet to roll them in. I have grubbed about fifteen acres of the land, and put in cultivation some of it. I have broken up, grubbed and cultivated about five acres on the side of the fence next to Martin's section 80. I have been on this land more than I have been at my father's or anywhere else since I bought it. I have paid all the taxes on the land since it was sold by the State to Vanlier, and have not had or claimed any other home since I bought the land. At the times when I was absent from the land to earn money I worked for wages. Worked some in Haskell County and some in King County. I raised and harvested a crop on the land last year, and have one growing there now. When I have been on the land in controversy I have done my own cooking and have eaten and slept at the camp I put up there when I bought the land, and which is there yet."

His testimony is corroborated by that of several neighboring young men who visited him about the time and soon after he built his pen or shanty on the land, and to whom he extended the hospitalities of his rustic abode. He gave them supper and breakfast and shared his quilts with them for a bed, extending a hearty welcome and a generous feast of such as he had.

If Vanlier was an actual settler on the land within the meaning of the statute, as the court below found, but which we seriously doubt, Marr's title was good. If he was not, then Marr's application to purchase was good, as the award to Vanlier, in that event, was void for want of actual settlement on the land and the land was therefore still on the market.

Hence we conclude that the judgment in favor of Marr is correct, and finding no error in the proceedings it is affirmed.

*Affirmed.*

In the original opinion we say that Marr paid on the land "the amount due, $156." We should have said that he executed his obligation for that amount to the State, that being the balance due on the Vanlier purchase, and since the decision of our Supreme Court in Hall v. White, 94 Texas, 452, 61 Southwestern Reporter, 385, we have no hesitancy in holding that Vanlier was an actual settler, and hence the legal conclusions of the learned district judge were correct in every particular, and as we affirmed his judgment, this motion is overruled.