### J. R. Price v. John Bates et al.

#### Decided May 2, 1903.

**1.—School Land—Actual Settlement.**

Evidence held sufficient to show that defendant was an actual settler on certain school land at the time his application was filed in the General Land Office, although at the date of the application he had only staid one night on the land, and had not removed his family and household goods to it.

**2.—Same—Mistake as to Boundary Line.**

Where the house which defendant occupied was near the line of the school land, and was supposed to be on it, and he believed in good faith that it was on the land, his rights were not prejudiced by the mistake, if the house was in fact not on the land.

**3.—Same—Charge—Diligence to Discover Mistake.**

Where there was no one in actual possession of the land, and it was not shown that there existed any general knowledge of a certain survey of it which showed the house not on the land, and defendant testified that he had no knowledge of such survey, the court properly refused, as not warranted by the evidence, to charge that if the jury found that the house was not on the land, and that defendant, by the exercise of reasonable diligence, could have ascertained that it was not, they should find for the plaintiff.

**4.—Same—Inquiry—Good Faith.**

As a matter of law, defendant was not bound to accept as true the claim that the house was on a different tract, or to inquire of those holding constructive possession, such matters going only to the question of his good faith in making the settlement.

Appeal from the District Court of Wilbarger. Tried below before Hon. G. A. Brown.

*Cook & Cook,* for appellant.

*J. A. Lucky* and *W. D. Berry,* for appellees.

CONNER, CHIEF JUSTICE.—The appellant Price instituted this suit to recover the north one-half of section 16, in block 3, surveyed by virtue of certificate 1108, issued to the Houston & Texas Central Railway Company, for the benefit of the public free school fund. A trial resulted in a judgment for appellee.

The undisputed facts show that the land in controversy had been duly sold to one Snyder in April, 1889, and that appellant on August 8, 1896, acquired the Snyder title. The Snyder purchase, however, was duly forfeited by the Commissioner of the General Land Office July 20, 1899, for nonpayment of interest. On September 2, 1899, the appellee Bates made application in due form to purchase as an actual settler, and the land was awarded to him by the Commissioner as such actual settler on February 16, 1900. In October, 1899, after appellee's said application, and after his application, obligation and first payment had been duly forwarded to and received by the proper State officers, appellant sought to have the Snyder purchase reinstated, but which application to reinstate was denied by the Commissioner on the ground that the land had been sold to appellee on the 5th day of September, 1899.

Sayles' Texas Civil Statutes, article 4218f, among other things, provides that in cases "where lands have been forfeited to the State for the nonpayment of interest, the purchasers or their vendees may have their claims reinstated on their written request by paying into the treasury the full amount of interest due on such claims up to the date of reinstatement, provided that no rights of third persons may have intervened." Appellant, in his application to reinstate the Synder purchase, fully complied with this provision of the law, and he was entitled to have the reinstatement sought, unless appellee has shown in himself an intervening right. This he has undoubtedly done if he has sufficiently shown that he was an actual settler on the land in controversy at the date of his application in September, 1899, this being the principal issue tried below, and the one to which appellant's assignments of error mainly relate.

It is insisted that the evidence is insufficient to sustain the verdict in the particular indicated, but after a careful consideration of the evidence we can not think so. There is a controversy in the evidence as to whether a house erected by Snyder was situated on the north half of section 16, or on section 13, which adjoined section 16. Appellee testified: "On September 1, 1899, I was in Vernon, and learned that the north half of section No. 16, the land in question in this suit, was

on the market for sale. I left town in the evening and went out to it and reached there late in the evening of the 1st day of September. I went into the house and slept there that night. I had with me a quilt and an extra pair of pants. I did not have anything to eat or provision or anything else with me or in the house except the quilt and a pair of pants, nor was any person or any of my family with me. I then came to Vernon the next morning and made my application and swore to it as an actual settler and mailed it that evening to the General Land Office, and sent the first payment to the Treasurer. I went back on the evening of the 2d of September to my father's house, where my wife was, and stayed at his house all night, and the next day I went over to the place where I had lived the year before and where my household goods were and stayed all night there on the 3d of September, and on the 4th I loaded my wagon with my household goods and started back to the north half of said section No. 16 and reached there about dark on the evening of the 4th, and have been living there ever since. When I entered the house I believed that it was situated on the north half of said section No. 16. I had heard that Snyder bought said section No. 16 and built the house and the fence that run just west of the house and east of the road. When I learned that it was claimed by some that the house was on section No. 13, I moved it about the last of March, 1900, over to a point east of where it originally stood, and where it was certain that it would be on said section No. 16. * * * I did not know at the time I moved in the house that Nabers had ever made a survey of the lines of said sections 16 and 13, or either of them. I knew that this public road (between the sections) was recognized in the community where this land is situated as being the dividing or boundary line between said sections. I had worked the road there myself, and had never heard the matter questioned until after I had moved into the house and G. M. Blackman commenced to assert some claim to the house, and then, to be certain I would be on section 16, I moved the house about 100 feet. I moved all of my household goods into said house on the evening of the 4th of September, 1899, and I have lived in said house ever since. I went in said house myself on the night of the 1st of September, 1899, with a part of my things. My wife was sick at the time and was not able to go in until the 4th of September, 1899."

As indicated the evidence was conflicting as to whether the house mentioned was in fact situated on section 16. We think it sufficient to sustain a finding that it was, but whether so or not, it clearly justifies the conclusion that appellee in good faith so believed and he hence is not prejudiced by the mistake, if any. Hall v. White, 94 Texas, 452, 61 S. W. Rep., 385; Martin v. Marr, 26 Texas Civ. App., 55, 62 S. W. Rep., 932; Moody v. Hahn, 25 Texas Civ. App., 474, 62 S. W. Rep., 940.

The court properly declined to instruct the jury as requested in special charge number 1, to the effect that if they found said house was situated on section 13, and "that defendant by the exercise of reasonable diligence and inquiry of those in possession could and would have ascer-

tained that the house was not on the north half of said section 16, you will find for the plaintiff." No one was in actual possession. It is not shown that there existed any general knowledge of the survey by J. A. Nabers upon which is founded the contention indicated. Appellee testified that at the time he moved into the house he did not know that Nabers had "ever made a survey of the lines of said sections 16 and 13 or either of them," and it hence appears that there is nothing in the evidence requiring the charge requested. Besides, as matter of law appellee was not bound, as this charge seems to imply, to accept as true the claim that the house was on section 13, or to inquire of those holding constructive possession. The issue was material, if at all, only upon the issue of appellee's good faith in making settlement, and this was submitted to the jury in the general charge, which we think not subject to the objections urged thereto.

Finding no reversible error the judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

It is very earnestly insisted that we were in error, among other things, in concluding that the evidence was sufficient to support a finding that the house mentioned in the original opinion "was in fact situated on section 16." No importance was attached to such conclusion on the original hearing, and in view of the complaint now made of it, it is withdrawn as immaterial. In this connection we will add that while the evidence that appellee was an actual settler upon the date of his application, September 2, 1899, seems somewhat meager, yet it is quite clear that he was such actual settler prior to September 5, 1899, when his application, obligations, etc., were filed in the General Land Office, unless the fact that appellee's innocent mistake as to where the true boundary line between sections 16 and 13 was, is of no avail; as to this, however, we adhere to the statement originally made by us to the effect that the evidence "clearly justifies the conclusion that appellee in good faith" believed that his settlement was on section 16, and, upon the authorities cited in the original opinion, that he is not prejudiced by such mistake.

Except as otherwise herein stated, the motion for rehearing is overruled.

*Overruled.*

Writ of error refused.