JAMES LOGUE ET AL. v. J. B. ATKESON ET AL.

Decided March 26, 1904.

**1.—Mortgage of School Land—Forfeiture—After-Acquired Title—Estoppel.**

L. and wife executed a deed of trust, with covenants of warranty, on a section of school land which had been purchased from the State by the wife. Proof of three years' occupancy of the land by them had been filed in the General Land Office and accepted, but afterwards the purchase of the land was forfeited by the State for nonpayment of interest and, the land having been reclassified, it was purchased from the State by L., and was conveyed by him to the wife as her separate property. Subsequently the land was sold at trustee's sale under power in the deed of trust, and the purchaser thereunder brought this suit against L. and wife for its recovery. Held, that by virtue of the covenants of warranty in the deed of trust defendants were estopped to set up the after-acquired title of L.

**2.—Same—Public Domain—Cases Distinguished.**

Lamb v. James, 87 Texas, 485, and cases following it, distinguished. School lands are not public domain after award and proof made of three years' occupancy, but are subject to execution and mortgage sale; citing Martin v. Bryson, 31 Texas Civ. App., 98.

Appeal from the District Court of Archer. Tried below before Hon. Ira Webster.

*Browning, Manning & Trulove,* for appellants.

*Turner & Boyce,* for appellees.

SPEER, ASSOCIATE JUSTICE.—This is an action of trespass to try title, instituted in the District Court of Armstrong County by J. B. Atkeson and wife, Willie D. Atkeson, against James Logue and his three minor children, to recover survey No. 96 in said county. The court entered judgment in favor of the plaintiffs for 440 acres of the land, after allowing 200 acres as the homestead of said Logue, upon the following conclusions of fact, which we adopt:

"(1) I find that on the 18th day of November, 1887, the land in controversy was awarded by the State of Texas to Mrs. Katie Logue in accordance with her application and obligation therefor. Said section of land being at the time State school land, classified as dry agricultural and appraised at the sum of $2 per acre by the Land Commissioner of the State of Texas. Said land being known as section 96, block B4, certificate 15-3427, original grantee, H. & G. N. Ry. Co., containing 640 acres. The said Katie Logue and her husband, James Logue, were at the time of said application and award actually residing upon said land, they having settled upon it as a home. That the first paymen of $32 was made by the said Katie Logue to the Treasurer of the State of Texas at the time her application for the said land was made, and the interest payments due on said land were kept up to and including the first day of August, 1891.

"(2) I find that on the 2d day of January, 1891, the said Katie Logue filed in the General Land Office of the State of Texas her proof of occupancy for said land, signed also by R. E. McQueen, E. W. Con-

rad and W. J. Killough, three credible citizens of Armstrong County, which said proof of occupancy was accepted by the said Land Commissioner and was deemed sufficient by him.

"(3) I find that on the 15th day of May, 1891, while the said Katie Logue and her husband, James Logue, were still residing upon the land in controversy, they made, executed and delivered to E. G. Vick, trustee, their certain deed of trust of that date, containing the usual covenants of warranty, duly acknowledged by them as required by law, for the purpose of securing four certain promissory notes of even date with said deed of trust, each due on or before the 15th day of May, 1892, for the sum of $225 each, bearing interest at the rate of 10 per cent from their date, with an additional 10 per cent for attorney fees, in case of suit to enforce collection; said notes providing, however, that in case the makers thereof, to wit, the said James Logue and Katie Logue, should sell either section 68 or 98 in block B4, Armstrong County, Texas, before the 15th day of May, 1892, then said notes should at once become due and should be paid out of the proceeds of such sale. But that should said section or any part thereof not be sold before the 15th day of May, 1892, then the notes should fall due on the 15th day of May, 1892; each of said notes reciting that it was secured by a deed of trust to all of section of land No. 96 in block B4, Armstrong County, Texas; each of said notes being payable to the order of J. B. Atkeson. And I further find that said deed of trust was filed for record in the office of the county clerk of Armstrong County, Texas, on the 27th day of May, 1891, and was recorded on the 28th day of May, 1891, in volume 1, pages 191, 192 and 193 of the deed of trust records of said county.

"(4) I find that E. G. Vick, the trustee in said deed of trust, removed from Armstrong County, Texas, to Russellville, Ky., in the summer of 1894, and resided in Russellville, Ky., continuously until August, 1902, when he removed to Bowling Green, Ky., where he has resided ever since and now resides. That the said Russellville, Ky., is about 1000 miles from Armstrong County, Texas; the railroad fare going and coming from Russellville, Ky., to Washburn, Texas, being not less than $32. That the said E. G. Vick has not been in Texas since he left this State in the summer of 1894, and has had no intention of again becoming a resident of the State of Texas.

"(5) I find that at the spring term, 1893, of the District Court of Armstrong County, Texas, in Claude, Texas, the plaintiff, J. B. Atkeson, acting as the authorized representative of his father-in-law, Joe Lehman, to whom the note secured by said deed of trust had been duly indorsed and delivered on May 29, 1891, and also acting for himself as indorser on said notes, requested the said E. G. Vick to act in his capacity as trustee and sell the land in controversy under said deed of trust in payment of the indebtedness named in said notes, and that the said E. G. Vick then and there declined to do so, stating that there was not enough in it as compensation to him and that he preferred to have nothing to do with it. I find that no other request was made to the

said E. G. Vick at any time to sell said land. I find that thereafter and prior to the time the notes became barred by limitation, they were duly indorsed and delivered by Joseph Lehman to his daughter, Mrs. Willie D. Atkeson, who became the legal owner and holder of the same at the time of the sale of the land hereinafter mentioned under the deed of trust. No part of said notes having been paid, except the sum of $75, which was paid thereon on the 16th day of May, 1891.

"(6) I find that the residence of the said E. G. Vick was unknown to the plaintiff, J. B. Atkeson, from the time he left Armstrong County, Texas, until after the sale of the premises in controversy under the deed of trust, and that the said J. B. Atkeson made inquiries among the citizens of Armstrong County in an effort to ascertain the whereabouts of the said E. G. Vick, prior to the time the said substitute trustee was appointed to sell the lands in controversy. And I further find that the said E. G. Vick would not have been willing to come from Russellville or Bowling Green, Ky., to Armstrong County, Texas, and act as trustee in the sale of said land, had he been requested so to do, unless he could know beforehand that he would receive compensation satisfactory to him, and that owing to the language of the deed of trust providing for his compensation, he could not know from the instrument alone what his compensation would be until after a sale of the premises should have been made.

"(7) I find that on the 1st day of May, 1894, the land in controversy was forfeited for nonpayment of interest due August 1, 1892, and was thereafter, on the 20th day of September, 1897, again classified, appraised and placed upon the market as dry grazing land at the price of $1 per acre.

"(8) I find that the land was awarded to James Logue in accordance with his application and obligation to purchase the same, dated September 20, 1897, filed in the General Land Office September 30, 1897, he having paid to the State Treasurer the first payment of $16. Said obligation being for the sum of $624, and said sale having been made in accordance with title 87, chapter 12a of the Revised Civil Statutes of 1895, and the amendment thereto by the Act of May 18, 1897.

"(9) I find that the said James Logue filed in the General Land Office of the State of Texas on the 31st day of October, 1900, his proof of occupancy of the land in controversy, sworn to by himself, W. W. Hood, J. C. Finley and R. T. Harvick on the 27th day of October, 1900, before B. C. McCaleb, clerk of the County Court of Armstrong County, Texas, which proof was deemed sufficient by the Land Commissioner and by him accepted.

"(10) I find that the said James Logue has continuously resided upon the land in controversy from the time it was first filed upon by his wife, as hereinbefore shown, his wife residing thereon with him until her death, a short time prior to the institution of this suit. That the first payment of principal and all interest payments due the State of Texas have been made by the said James Logue since he filed upon

said land, and his account with the Land Office is in good standing as to said land.

"(11)  I find that on October 27, 1900, James Logue, for the recited consideration of $600, in and by his deed of that date conveyed the land in controversy to his wife, Mrs. Katie Logue, and that the consideration recited in said deed was to pay the said Katie Logue for certain money inherited by her from her mother's estate, and for which the said James Logue was indebted to her at the time of the execution of said deed.

"(12)  I find that on the 12th day of April, 1901, Mrs. Willie D. Atkeson being the legal owner and holder of the notes described in the deed of trust hereinbefore mentioned, and no part of said notes having been paid, except the sum of $75 on May 16, 1891, the said Willie D. Atkeson and J. B. Atkeson, her husband, by their certain instrument in writing, bearing date on the 12th day of April, 1901, duly acknowledged by them as required by law, made, constituted and appointed J. G. Rice of Armstrong County, Texas, as substitute trustee to sell the land in controversy in payment of the debt so evidenced by said notes and to satisfy the lien evidenced by said deed of trust; which said instrument is recorded in the deed of trust records of Armstrong County, Texas, volume 2, pages 78 and 79.  Said appointment having been made in accordance with the provision in said deed of trust, authorizing the appointment of a substitute trustee in case of the failure, refusal or disqualification of the said E. G. Vick, trustee.

"(13)  That on the first Tuesday in May, 1901, it being the 7th day of said month, the said J. G. Rice, as substitute trustee, proceeded to sell the property in controversy at the courthouse door of Armstrong County, Texas, at public sale, between the hours of 10 o'clock a. m. and 4 o'clock p. m. of said date, after having given notice by delivering to the said Mrs. Katie Logue and her husband, James Logue, a true copy of the advertisement of the said sale, on the 12th day of April, 1901, and also by posting up written notices of said sale on the 12th day of April, 1901, at three public places in Armstrong County, Texas, one of which was at the courthouse door of said county.  And at said sale the premises were bought in by Mrs. Willie D. Atkeson, as her separate property, for the sum of $300, and a deed was made, executed and delivered to her by the said J. G. Rice, substitute trustee, dated May 7, 1901.  That said Mrs. Atkeson paid nothing on her bid, but the same was taken as an indebtedness on the notes which the deed of trust was made to secure.  That defendant James Logue was present at said sale, and before the bidding begun he made a public announcement protesting that the sale was not legal, and that the land was the separate property of his wife, Katie Logue, and that the person buying would have a law suit to get the land.

"(14)  I find that on the 31st day of May, 1902, Mrs. Willie D. Atkeson and her husband, J. B. Atkeson, made, executed and forwarded to the Land Office of the State of Texas their obligation in writing in

the sum of $624, payable to the State of Texas as the balance of the purchase money for the land in controversy, said obligation providing for the payment of the annual interest of 3 per cent upon all unpaid principal together with one-fortieth of the original principal, to be paid to the State Treasurer at Austin, Travis County, Texas, on or before the 1st day of each November thereafter, until the whole purchase money was paid. Said application was in the usual form for such instruments, and was returned by the Land Office for the reason that the Land Office would not accept deeds from trustees, executors, administrators, heirs and sheriffs for the purpose of passing title to lands that had not been patented by the State. And I further find that when said obligation was sent to the Land Office, where it was received on July 4, 1902, it was accompanied by the deed from J. G. Rice, substitute trustee, to Mrs. Willie D. Atkeson. That said obligation was returned to J. B. Atkeson on July 7, 1902.

"(15) I find that at the time of the execution of the deed of trust herein, James Logue and his wife, Katie Logue, resided with their children on the land in controversy, and that it was then their homestead and has ever since been, and is now the home of the defendants herein. That they have placed valuable and permanent improvements on said section, consisting of houses, fences, well, windmill and tank, these improvements being on the south part of said section. That the Fort Worth & Denver City Railway runs across said section east and west, having a right of way 200 feet wide across said section, and leaving a tract of land across said section south of said right of way, on which the residence house, windmill and well of the defendants are located, and that there is a useful and valuable tank just on the north side of said right of way, and that in order to set aside to the defendants the improvements desired by them and cut off 200 acres for their homestead so as to include said improvements, the descriptions of said 200 acres should be as follows: All that part of said section lying south of the Fort Worth & Denver City Railroad right of way (being less than 200 acres), together with all improvements thereon, and in addition thereto enough of said section lying north of said right of way which added to said tract of land lying south of said Fort Worth & Denver City Railroad right of way shall make 200 acres all told, exclusive of said right of way 200 feet wide. The lines of said tract north of said right of way to be run as follows: Beginning at the point in the east boundary line of said section, 100 feet north of the center of said Fort Worth & Denver City Railroad track. Thence running north with the east boundary line of said section until a line running from the east boundary line of said section in a westerly direction and passing at least ten feet north of a dirt tank near said east boundary line shall intersect the right of way of said Fort Worth & Denver City Railroad, or the west boundary line of said section, at such point as that the area included within said limits north of said right of way shall, when added to the tract of land south

of said right of way, make the sum of 200 acres, exclusive of said right of way.

"(16) I find that the defendants, Hugh R. Logue, Chester Logue and Lily Logue, are minors, the children of the defendant James Logue and his deceased wife Katie Logue."

Appellants' principal contention is that the after-acquired title of James Logue did not inure to the benefit of the mortgagee, and the cases of Lamb v. James, 87 Texas, 485; Raynor Cattle Co. v. Bedford, 91 Texas, 642, and Lang v. Crothers, 21 Texas Civ. App., 118, 51 S. W. Rep., 271, are cited to support such contention. But it is clear that at the time of the execution by James Logue and wife of the deed of trust upon the land in controversy, such land was not public domain within the meaning of these authorities. It had been awarded by the Commissioner of the General Land Office to the mortgagor, Katie Logue; the required three years occupancy had been lived out, and proof of occupancy had been made and accepted by the General Land Office. Such lands are the subject of sale, of seizure upon execution (Martin v. Bryson, 31 Texas Civ. App., 98, 6 Texas Ct. Rep., 458), and, we think, of mortgage.

The court having found that the deed of trust contained the usual covenants of warranty, which we construe to mean a general warranty by appellant James Logue as well as his wife Katie, we think appellant is estopped thereby to assert his after-acquired title from the State, and the consequent invalidity of appellees' mortgage. Such title only fed the mortgage. Bush v. Marshall (U. S.), L. Ed. Book 12, 440; Spies v. Newberg (Wis.), 37 N. W. Rep., 417; Blakslce v. Insurance Co., 57 Ala., 205; Powers v. Patten, 71 Me., 583. While Mrs. Logue was not bound by her covenant of warranty of title (Wadkins v. Watson, 86 Texas, 194), the husband James Logue, who is under no disability, was bound by his covenants. Chaison v. Beauchamp, 12 Texas Civ. App., 109, 34 S. W. Rep., 303; Speer on Married Women, sec. 68; Powers v. Patten, supra.

The decision in Lang v. Crothers is in nowise contrary to the holding in this case; there the after-acquired title of Crothers was the paramount title. The land having been forfeited by the Commissioner of the General Land Office for the nonpayment of interest due by Lang, the case stands as though Crothers held by mesne conveyances from Lang, and the doctrine of estoppel to assert an after-acquired title has no application to such a case.

All assignments are overruled and the judgment is affirmed.

*Affirmed.*

Writ of error refused.