### R. C. Conn v. J. J. Terrell, Commissioner, et al.

No. 1313. Decided May 16, 1904.

**School Land—Owner of Town Lot—Purchase of Additional Land.**

The owner and resident on a lot of four acres situated in an incorporated town is not such an "owner of other lands" as is entitled to purchase additional sections to his home place under article 4218fff of the Revised Statutes. (Pp. 579-581.)

Original application for writ of mandamus from the Supreme Court to the Commissioner of the General Land Office.

*James & Yeiser*, for applicant.—We deem it only necessary to call this court's attention to the discussion of this question by the Court of Civil Appeals for the Second Supreme Judicial District in the case of Roddy

v. White, 7 Texas Ct. Rep., 998, in which it is expressly held that the character of land necessary to be owned by a person, in order to purchase additional public free school land, is in no manner limited or qualified by the article of the statute authorizing the purchase of additional land. In this case the court says that we can not read into the article "provided such other lands be agricultural lands," or "provided such other lands be rural lands," or "provided such other lands be in town lots," for the language is clear and unambiguous. It is not a case for construction. "We see no reason for holding that under the statute a farmer or stockman who may own a section of railroad land may purchase additional land from the State, while a blacksmith or a school-teacher, who owns but a town lot, may not do so." "Each is a citizen and land owner and can meet the requirements of the statute, and the only difference is in the quantity of the land owned. The interests of the State are as well conserved by a sale to one as to the other."

*C. K. Bell,* Attorney-General, and *T. S. Reese,* Assistant-Attorney General, for respondent.

GAINES, CHIEF JUSTICE.—This is a petition by the relator to compel the Commissioner of the General Land Office to reinstate him as purchaser of a quarter of a section of school lands. The facts alleged in his petition are uncontroverted, and the question is, did he show that he was the lawful purchaser of the land in controversy? The facts are that he applied to purchase it, not as an actual settler upon the tract, but as the owner of and resident upon a lot consisting of four acres in the incorporated town of Kirbyville, within a radius of five miles of which the land in controversy was situated; that he complied in all respects with the requirements of the statute in his application; that his application was at first accepted and the land awarded to him, but that subsequently the Commissioner had canceled the award and sold the land to another. It also appeared that the Commissioner had refused to reinstate him as a purchaser, upon his application therefor. If as the owner of a town lot he was authorized to purchase the quarter section, the writ of mandamus should be awarded; if not, it should be denied.

The provision of the statute under which the right to purchase is claimed is contained in article 4218fff of the Revised Statutes, which reads as follows: "Any actual bona fide owner of and resident upon any other lands contiguous to said lands, or within a radius of five miles thereof, may also buy any of the aforesaid lands, but in such case a failure to reside upon either his other lands or a part of the additional lands so purchased by him, so as to make his ownership and occupancy thereof continuous for three years, shall work a forfeiture of such additional lands so bought from the State, unless he shall have sold his land to another who may and does complete a three-years' continuous ownership and occupancy of and residence upon his said lands as above stated and as herein required of actual settlers." The simple question

is, did the Legislature, by the use of the words, "owner of other lands" intend to include the owner of a lot or lots in a town? We are of the opinion that they did not.

Section 4 of article 7 of our Constitution provides, "that the lands herein set apart to the school fund shall be sold under such regulations, at such times and upon such terms as may be provided by law." This clearly makes it the duty of the Legislature to provide for the sale of the school lands for the benefit of the school fund. We think it follows that in making such provisions it was their duty to regulate the sales in such manner as in their opinion would be most beneficial to the object of the State's bounty. When the present system was adopted it was provided as a rule that these lands should be sold to "actual settlers only." While it is true that the actual settler has usually been favored in legislating for the disposition of the public lands of the State, it could hardly have been the purpose of the Legislature in making this provision as to the sale of the school lands to restrict competition among purchasers for the benefit of this class only. It seems more probable that their idea was that by selling the lands in small quantities to those who would make their homes upon them and thus improve the country, they would enhance the value of those unsold, and thus in the end produce more for the fund they were intended to accumulate. We think the action of the Legislature could hardly be justified upon any other ground.

The subsequent course of the legislation upon this subject indicates that such was the idea which underlies the policy. By the Act of 1895 a settler was permitted to buy one section only. But in 1897 it seemed to have dawned upon the Legislature that in the unsettled parts of the State, where the bulk of the school lands was situated, the successful pursuit of agriculture without irrigation was uncertain, and that by reason of the insufficient rainfall in these localities a larger area might be required in order to enable the settler to supplement the income of his farm by raising cattle. This would appear especially true as to those settlers who might desire to make a support for themselves and their families by grazing live stock. Accordingly in that year the law was so changed as to permit a settler to buy four sections in all, provided not more than two were classed as agricultural lands. Article 4218fff, previously quoted, appears in the same act in which this change was made. It seems to us that the consideration which prompted this provision was, that there were many owners of land which had never belonged to the school fund, but which lay in close proximity to school lands, who found it difficult to support themselves upon their small holdings, and that sound policy dictated that they should be permitted to buy additional lands so as to fix them to the soil and to maintain the settlement of the country. In addition, we think that the Legislature, in providing for the sale of the school lands, may have also considered that it was to the best interest of the State to sell the lands to those who were to occupy them, or who were permanently

occupying other lands in their vicinity so as to promote their use and to render them productive. Residents in towns as a rule live neither by agriculture nor by stockraising, and it can hardly have been thought the policy of the laws in that respect would be advanced by permitting such residents to purchase.

It appears from the answer of the respondent Terrell, that a former Land Commissioner took the opinion of the Attorney-General in office at that time upon this question. The answer of the latter to the inquiry is set out in full in the pleading of the respondent. That opinion after quoting article 4218fff proceeds as follows: "In my opinion an owner and resident upon a town lot can not purchase additional lands under this section. Within the meaning of 'other lands' the Legislature did not intend to embrace town lots. While technically 'other lands' would include a town lot, yet by the common and ordinary use of this language, by which we are to be guided in this instance, it would not be so understood, and the Legislature evidently used the phrase in the sense ordinarily given it. Also in other sections of the act, and notably in section 4218f, the terms 'land' and 'other lands' are indisputably used in the popular sense above indicated and as not embracing town lots, but meaning agricultural or grazing lands. There is nothing in the context to justify the holding that a different meaning was intended by the use of the phrase in the section quoted." In view of what we conceive to have been the policy of the Legislature, we deem this a correct construction of the act.

The mandamus is therefore refused.

*Mandamus refused.*