DE SHAZO et al. v. EUBANK. (No. 632.)

(Court of Civil Appeals of Texas. El Paso. Dec. 7, 1916. On Rehearing, Jan. 26, 1917.)

1. PUBLIC LANDS ⚖=173(5)—SCHOOL LANDS— PURCHASE BY COUNTY SURVEYOR—"PUBLIC LAND."

Notwithstanding Pen. Code 1911, art. 164, making it a misdemeanor for any county surveyor to be directly or indirectly concerned in the purchase of any public land, a county surveyor could purchase title acquired by a purchaser of school land who had fulfilled the conditions of occupancy and improvement, but who had not yet filed the proof of occupancy and improvement, and to whom certificate of occupancy and final patent had not issued; for such land is not "public land" within the meaning of section 164, but the relation of the state to such land is not essentially different from that of a vendor in ordinary sales of land where the vendee has not made default.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 547, 548; Dec. Dig. ⚖=173(5).

For other definitions, see Words and Phrases, First and Second Series, Public Land.]

2. PUBLIC LANDS ⚖=173(13)—SCHOOL LANDS —OBJECTION TO SALE—COLLATERAL ATTACK.

The fact that the lots on which stood a house of a purchaser of school lands as additional to private land was not private land withing the meaning of the law relating to the sale of free school land and such as to authorize such purchase under Sayles' Ann. Civ. St. 1897, art. 4218fff, or that there was an irregularity in his three years' occupancy upon the lots, were mere irregularities which would not avoid such sale by the commissioner in good faith.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 547, 548; Dec. Dig. ⚖=173(13).]

3. APPEAL AND ERROR ⚖=1051(4)—HARMLESS ERROR.

In an action involving a deed, where the deed recited a consideration, the admission of testimony of the grantee as to the consideration paid deceased grantee therefor was harmless, in the absence of evidence impeaching the consideration.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4168; Dec. Dig. ⚖= 1051(4).]

4. PUBLIC LANDS ⚖=174 — SCHOOL LANDS — COLLUSION.

The issuance of a certificate of occupancy to one purchasing school lands precludes inquiry into any question of collusion.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 552-554; Dec. Dig. ⚖=174.]

5. EVIDENCE ⚖=584 — SUFFICIENCY — "ANY EVIDENCE."

Testimony that raises a mere surmise or suspicion of the existence of a fact sought to be established in legal contemplation falls short of being "any evidence."

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2424, 2426, 2427; Dec. Dig. ⚖= 584.

For other definitions, see Words and Phrases, First and Second Series, Any.]

6. MORTGAGES ⚖=38(2)—ABSOLUTE DEED AS MORTGAGE—EVIDENCE.

Where it is sought to ingraft a parol trust on an absolute deed and show that it is intended

as a mortgage, the evidence must show that fact with clearness and certainty.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 109; Dec. Dig. ⊛=38(2).]

**7. MORTGAGES ⊛=36 — ABSOLUTE DEED AS MORTGAGE—BURDEN OF PROOF.**

One alleging that a deed is a mortgage has the burden of proving that fact.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 95, 96; Dec. Dig. ⊛=36.]

**8. EVIDENCE ⊛=271(15) — DECLARATIONS OF GRANTOR AFTER CONVEYANCE.**

Declarations of a grantor that he claimed the land and contemplated improving and living upon it, made after the date of his conveyance, and not in the presence of the grantee, are inadmissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1092, 1093; Dec. Dig. ⊛=271(15).]

On Rehearing.

**9. MORTGAGES ⊛=38(1)—ABSOLUTE DEED AS MORTGAGE — INADEQUACY OF CONSIDERATION.**

Inadequacy of consideration for an absolute deed, taken alone, is insufficient to show that it was intended as a mortgage.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 108; Dec. Dig. ⊛=38(1).]

Appeal from District Court, El Paso County; P. R. Price, Judge.

Suit by J. W. Eubank against Maria De Shazo and others, in which defendants filed a cross-action. From judgment for plaintiff, defendants appeal. Affirmed.

M. W. Stanton, of El Paso, for appellants. Nealon & Dorman, of El Paso, for appellee.

HIGGINS, J. Eubank filed this suit January 22, 1915, against Maria, Donald, and Kenneth De Shazo, to remove cloud from title to survey No. 218, S. F. No. 7088, H. M. Mundy, grantee, containing 160 acres, situate in El Paso county. Defendants pleaded not guilty, and filed a cross-action asserting title in themselves. Upon trial before a jury a peremptory instruction was given in plaintiff's favor, in accordance wherewith verdict was returned and judgment rendered.

On May 5, 1908, the land in controversy was public free school land, and by application of that date, filed in the general land office May 18, 1908, E. L. De Shazo applied to purchase the same as additional to private land. Upon this application the land was awarded September 12, 1908. By quitclaim deed dated January 17, 1912, filed for record April 7, 1913, E. L. De Shazo, for a recited consideration of $250, conveyed all of his right, title, and interest in the land to Eubank. On June 20, 1912, De Shazo made his proof of occupancy and improvements, and filed same in the general land office on June 22, 1912, and on June 24, 1912, certificate of occupancy was issued and sent to De Shazo by the land commissioner. On December 18, 1913, De. Shazo died intestate, leaving as his heirs the defendants herein, namely, his wife, Maria, and two children, Donald and Kenneth. On May 8, 1913, the land was patent-ed by the state to E. L. De Shazo, his heirs and assigns. At the time he applied to purchase the land De Shazo owned and resided upon lots 1, 2, and 3 in block 21 in Grandview, an addition to and part of the city of El Paso. Grandview is a part of the Salazar grant, and is laid off into streets, lots, and blocks. The addition is not within the corporate limits of the city of El Paso. The three lots had a 75-foot front. De Shazo continued to reside there until the date of his death. This was his home tract and the private land referred to in his application to the state to purchase the land in controversy. Upon the dates above mentioned and long prior thereto, Eubank was county surveyor of El Paso county. In the application to purchase the description of the private land and home tract is as follows:

"Part Survey No. 119, Block ——, Twp. ——, Certificate ——, Grantee, Salazar, in El Pazo County."

It is insisted by appellants that appellee has failed to show title in himself. This contention is based upon the fact that Eubank was county surveyor at the time De Shazo conveyed to him, and it is asserted that the land at that time was public domain, title to which could not be acquired by Eubank in view of article 164 of the Penal Code, which makes it a misdemeanor for any county surveyor to be directly or indirectly concerned in the purchase of any right or interest in any public land in his own name or in the name of any other person. This involves a consideration of the nature of the title acquired by a purchaser of school land who has fulfilled the conditions of occupancy and improvement, but who has not yet filed the proof of occupancy, and to whom certificate of occupancy and final patent has not issued.

In State v. Lumber Co., 106 Tex. 41, 155 S. W. 1178, the Supreme Court, speaking through Justice Phillips, says that the relation of the state to school land sold to a purchaser in compliance with the law, whose purchase is in good standing, is not essentially different from that of a vendor in ordinary sales of land where the vendee has not made default, and it was held that, while the state holds the superior title until the purchase is completed, yet it is plainly the law that the purchaser acquired an equitable title which will support the action of trespass to try title. The relation of the holder of the vendor's lien is thus stated in Stephens v. Motl, 82 Tex. 81, 18 S. W. 99:

"Although he held the superior title as between himself and his vendee, Rucker [the holder of the vendor's lien] stood in the relation of a mortgagee * * * out of possession, and not entitled to possession until default on part of the vendee and a rescission by him of the contract, or a foreclosure."

And as to what is meant by the superior title the language in Carey v. Starr, 93 Tex. 508, 56 S. W. 324, is:

---

⊛=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"The title that remains in the vendor in such transaction is superior in the sense that the vendee cannot assert his title against the vendor, unless he has paid the purchase money. From the time it was first announced that the reservation of lien in a deed reserved the superior title to the vendor, there has been a continuous and persistent effort to push it to the limit of executory contracts for the sale of land, but this court has steadily resisted that effort, and has uniformly limited the vendor's title to the character of security for the purchase-money debt. * * * "

In Insurance Co. v. Ricker, 10 Tex. Civ. App. 264, 31 S. W. 248, it was held that the vendee was the owner of property where a vendor's lien had been retained to secure the payment of purchase-money notes. It says that the Supreme Court, in using the term "superior title" in cases where a vendor's lien is retained, did not intend to give to it its full force and signification; that a party in possession under contract of purchase conceded to be in force is the owner in equity.

[1] Under this view of the case, it would seem clear that the land at the time De Shazo sold it to Eubank was not public domain or public land, but it had become the private property of De Shazo, subject to a lien in favor of the state for the payment of the balance of the purchase money, and subject to the condition subsequent that his title would fail if he did not, within the time prescribed by law, file proof of occupancy and improvements.

Pursuing the subject further: The Montana court, in State v. Cunningham, 35 Mont. 547, 90 Pac. 755, said:

" 'Public domain' is defined by Webster to be the territory belonging to a state or to the general government; public lands. This is the general significance of the words according to the approved usage of the language. The idea of public domain excludes that of private ownership."

In Logue v. Atkeson, 35 Tex. Civ. App. 303, 80 S. W. 137, it was held that land upon which proof of the three years' occupancy had been made and accepted was subject to mortgage, and that the land was not public domain within the meaning of Lamb v. James, 87 Tex. 485, 29 S. W. 647, and other authorities cited. In Lamb v. James, the court, in declaring that a contract for the sale of public land was void, defined "private lands" as "lands the titles to which have passed, or so far passed out of the government as to be the lawful subject-matter of private contract."

If we follow the test stated in Lamb v. James that lands the title to which has passed or so far passed out of the government as to be the lawful subject-matter of private contract are private lands, and not public lands, then the land in controversy was the private land of De Shazo at the time he sold it to Eubank, and he could sell it to the county surveyor or any one else; the three years' occupancy being complete, and no default made in the payments to the state.

In Martin v. Bryson, 31 Tex. Civ. App.

98, 71 S. W. 615, the court held that land additional to the home tract was subject to sale under execution where the occupancy of the home section was complete. In that case it was said:

"The learned judge who tried the case, it is said in the briefs, was of opinion that the land was not subject to execution, because it was unpatented school land, and for that reason instructed a verdict for the appellee. In this we think his honor erred. The title of appellee, it is true, was a defeasible, equitable title; but, as he was an actual settler, and had resided upon the home tract for more than three years, he had the right to sell the section levied on, and the purchaser was not required to reside thereon or occupy the same. * * * We therefore conclude that, as the interest of the appellee, Bryson, in this section of land was such as he could sell to any person who would buy, regardless of whether such person occupied the land afterwards or not, it was a vendible interest, and was subject to execution."

In Wilson v. Nugent, 91 S. W. 241, the court held that a purchaser whose occupancy was complete, but to whom patent had not issued, was "in effect the owner of the land, and a conveyance in writing was necessary to pass his title."

In Day Land & Cattle Co. v. State, 68 Tex. 526, 549, 4 S. W. 865 at page 876, the Supreme Court said that the Constitution used "public land" in the same sense as "public domain," and in referring to the clause of the Constitution referring to "vacant lands" and "vacant public domain" says this is done to show that such lands (grants to railway companies), though once severed from the public domain, should become subject to "pre-emption, location, and survey," just as though such lands had never ceased to be a part of the public domain. "The section further, in effect, declares that lands located and surveyed by virtue of valid land claims, or to which inchoate titles have been acquired, shall not be deemed vacant and unappropriated public domain, on account of any mere informality attending the acquisition which does not affect its legality. Such lands are understood to be equitably owned before they are patented." This case cites State v. Delesdenier, 7 Tex. 108, to the effect that:

"Appropriation of land by the government is nothing more nor less than setting it apart for some particular use; and, whenever a tract of land shall have once been legally appropriated to any purpose, from that moment the land thus appropriated becomes severed from the mass of public domain [etc.] * * * Having lost the character of 'public lands,' it could not regain that character, except by direct and express terms."

So it would seem that the sale and award of the land to De Shazo segregated it from the public domain, and that he had, by occupancy and improvement and keeping up his interest payments acquired an equitable title, and was the owner of the land, subject to the lien in favor of the state to secure the payment of the balance of the purchase money. The mere fact that De Shazo failed to pay the balance due on the purchase price, and that the state might assert its lien and

cause the land to be restored to the public domain and become once more public land, did not in any wise affect its character as private land at the time of the sale and of Eubank's consequent right to buy. He might be punished for buying only if it was public land. It could hardly be contended that Eubank would be violating the penal statute if he bought after patent had issued. Yet there is always a possibility that the state may sue to annul a patent, and such a suit, if successfully prosecuted, would impress upon the land the character of public land. Faulk v. Sanderson, 89 Tex. 692, 36 S. W. 403.

In Phillips v. Campbell, 146 S. W. 320, it is said:

"Upon the completion of three years of continuous occupancy, the settler, or his assignee, has a vested right in the fee-simple ownership of the land, and may demand of the proper officer a patent investing him with the legal title. * * * When Minor conveyed his interest to Campbell, he owned the land, but had not acquired the naked legal title from the state."

In view of these authorities, we think it clear that public free school land upon which the purchaser has resided and made the improvements required by law becomes his private property, and is no longer to be regarded as public land within the meaning of the article of the Penal Code above cited. This is true as soon as the required occupancy and improvements have been made. The purchaser has a certain length of time after the expiration of his three years' occupancy within which to file his proof of occupancy and improvements. The failure to file same creates a ground of forfeiture of his rights which is in the nature of a condition subsequent. He incurs the same penalty that he would incur if he failed to make his interest payments, viz. the loss of his land; but the land continues to be his private property until he loses it by failure to pay the principal and interest or by the failure to file proof of his occupancy and improvements within the time required by the statute. The time of the issuance of the certificate of occupancy has no bearing whatever upon the respective rights of the parties. The certificate merely evidences the fact that the land has been occupied and improvements made, as required by law, and precludes inquiry into the question of occupancy and improvements, as well as of collusion. The purchaser does not lose his rights if the certificate of occupancy is never issued. So the fact that the certificate of occupancy had not been issued at the time De Shazo conveyed to Eubank does not in anywise affect the rights of the parties hereto. We conclude that Eubank had the right to buy the land at the time De Shazo conveyed to him.

It is also insisted that no title passed to Eubank by De Shazo's deed, because the lots in Grandview addition upon which De Shazo's home was situate and where he resided during the required three years' oc-

cupancy was not private land within the meaning of the law relating to the sale of free school land, and that his ownership thereof and residence thereon would not authorize the purchase of school land as additional thereto.

[2] In support of this contention reference is made to Conn v. Terrell, 97 Tex. 578, 80 S. W. 608, where it was held that the owner of and resident upon a four-acre lot in any incorporated town is not such an "owner of other lands" as would entitle him to purchase additional sections to his home place under article 4218fff, Sayles' Ann. Civ. St. 1897. That case, however, was a direct proceeding by the owner of and resident upon the urban property to compel the commissioner of the general land office to sell and award to him a section of land as additional to his urban property. Here the commissioner actually made the sale and award to De Shazo, and we are not prepared to hold that his act in so doing was absolutely void. There is no question but that the commissioner was vested with the power to make a sale and award of the land to a qualified purchaser. It is not a case where there was an inherent want of authority to sell and award the land. The commissioner having determined that De Shazo was a qualified purchaser as the owner of and resident upon a part of the Salazar grant, and having actually made the sale and award, and De Shazo having complied with all the terms and conditions of his purchase, it is not believed that the sale and award could properly be regarded as a nullity so as to subject the same to collateral attack. Quite a different question would be presented if the land commissioner had refused to make the sale upon the ground that the lots in Grandview did not constitute a proper base or home tract and De Shazo had sought to compel him to make such sale. So far as the record discloses, both the commissioner and De Shazo acted in good faith. Under such circumstances, the sale and award of the land as additional to land which, strictly considered, may not have been a proper home tract, may have been irregular, but it was not such a fatal irregularity as would deprive the sale and award of all vitality and render it a nullity. The same is true of the irregularity of the three years' occupancy upon the lots. We think the situation analogous to that line of cases which protects a purchaser of school land who by mistake, but in good faith, was a settler upon and resided upon the wrong tract of land. Hall v. White, 94 Tex. 452, 61 S. W. 385; Price v. Bates, 32 Tex. Civ. App. 374, 74 S. W. 608; Martin v. Marr, 26 Tex. Civ. App. 55, 62 S. W. 932; Moody v. Hahn, 25 Tex. Civ. App. 474, 62 S. W. 940.

It may be that this phase of the case is controlled by the rule, which it is held applies to patented school land, that where a patent to public land issued without the

observance of all preliminary proceedings authorizing it, such patent is valid as to all persons except the state and those holding under it by superior equities. See cases cited in 14 Michie, Dig. p. 484. But there is an intimate relationship between this and the first contention made by appellants. For, if De Shazo acquired no right under the sale and award to him, and the same was a nullity, then the land remained public domain, and Eubank was inhibited from purchasing by article 164 of the Penal Code. In such event neither plaintiff nor defendants would have any title, and since Eubank must recover upon the strength of his own title, judgment should properly have been rendered that he take nothing.

It is not necessary to determine and we do not pass upon the status of the Grandview lots as a proper home tract. Our decision is based upon the ground above indicated.

There is no merit in the contention that the evidence is insufficient to show execution and delivery of the deed from De Shazo to Eubank. There is abundant evidence to that effect and none to the contrary.

There is likewise ample evidence of a sufficient consideration to support the deed. Plaintiff's pleading was sufficient to authorize proof of a valid and sufficient consideration. In all other respects such pleading was sufficient.

The court did not err in permitting plaintiff, J. W. Eubank, to testify that the consideration of the quitclaim deed by which De Shazo conveyed the property in controversy to plaintiff was the payment by plaintiff, at the request of De Shazo, of a note for $250 and the satisfaction of two debts that De Shazo owed Eubank. Plaintiff's testimony of transactions with De Shazo were competent as against Mrs. De Shazo, she not claiming as an heir or legal representative of decedent.

[3] Aside from this, the deed recited a valuable consideration, there is no evidence of a want of consideration, and the testimony objected to was merely confirmatory of the recital in the deed. In the absence of any evidence impeaching the consideration, the admission of Eubank's testimony, if erroneous, was harmless.

[4, 5] We find no evidence of probative force sufficient to warrant submission to the jury of the contentions made in assignments Nos. 9, 10, and 11 that the evidence showed: (a) An agreement between Eubank and De Shazo made immediately after the filing of De Shazo's application to purchase, whereby Eubank was to have an interest in the land; (b) an agreement between them, made prior to the date of the award of said land or prior to the completion of the three years' occupancy, whereby Eubank was to receive the land or an interest therein. Furthermore, the issuance of the certificate of occupancy precluded inquiry into any question of collu-

sion. Logan v. Curry, 95 .Tex. 664, 69 S. W. 129; Mitchell v. Robison, 103 Tex. 642, 132 S. W. 465. Neither is there evidence of sufficient probative force to warrant the submission of the issue that De Shazo's deed to Eubank was intended as a mortgage. Testimony that raises a mere surmise or suspicion of the existence of a fact sought to be established in legal contemplation. falls short of being "any evidence." Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059.

[6] Furthermore, where it is sought to ingraft a parol trust on an absolute deed and show that it is intended as a mortgage, the evidence relied upon for that purpose must show the fact with clearness and certainty. Miller v. Yturria, 69 Tex. 549, 7 S. W. 206; Gazley v. Herring, 17 S. W. 17; Focke v. Buchanan, 59 S. W. 821.

[7] The burden of proving that the deed was a mortgage rested upon appellants, and they must have shown the fact by competent evidence. Hardie v. Campbell, 63 Tex. 292; Irvin v. Johnson, 44 Tex. Civ. App. 436, 98 S. W. 405.

Tested by these well-settled rules, we think there was no competent evidence of sufficient probative force to warrant the submission of the issue made by the pleadings that De Shazo's deed to Eubank was intended as a mortgage.

[8] The court did not err in excluding the testimony of the witness, Thornton, and others, of declarations of E. L. De Shazo that he claimed the land and contemplated improving and living upon it, made after the date of his deed to Eubank, and not in the presence of Eubank. Bullock v. Smith, 72 Tex. 545, 10 S. W. 687; Grooms v. Rust, 27 Tex. 231; Crawford v. Hord, 40 Tex. Civ. App. 352, 89 S. W. 1097.

The plaintiff's petition was sufficient, and there was no error in overruling the defendant's exceptions thereto.

Affirmed.

### On Rehearing.

In discussing Conn v. Terrell, 97 Tex. 578, 80 S. W. 608, it was said in original opinion that it was a direct proceeding by the owner of and resident upon urban property to compel the commissioner of the general land office to sell and award to him a section of land as additional to his urban property.

In the motion for rehearing our attention is directed to the fact that the case mentioned was a proceeding to compel the land commissioner to reinstate Conn as a purchaser of school land; a previous award to him having been canceled. The correction is now noted. The inaccuracy of statement made in the original opinion is unimportant. The observations made upon the case are equally applicable to a proceeding to reinstate an award which had been previously canceled. In substance and effect, it was a proceeding to compel the commissioner to sell and award to Conn a tract of school land as additional

to his urban property. The principle is the same whether the proceeding was to compel a sale and award in the first instance or to compel a reinstatement of a previously canceled award.

All questions presented in the motion for rehearing were fully considered and discussed in the original opinion. Our views are sufficiently indicated in that opinion, and we adhere to the view that it made a correct disposition of the various assignments.

[9] We will add only this observation with respect to the contention that there was sufficient evidence to require submission of whether the deed to Eubank was intended as a mortgage, namely: It may be conceded that there are some circumstances from which it might be surmised that such was the intention, notably the inadequate consideration. But inadequacy of consideration alone is insufficient. Facts sufficient to justify a suspicion or surmise do not at all measure up to the standard required to ingraft such a parol trust upon an absolute conveyance. See cases cited in original opinion and for facts held insufficient to show such a trust see Focke v. Buchanan, 59 S. W. 821; Muckelroy v. House, 21 Tex. Civ. App. 673, 52 S. W. 1038.

The motion for rehearing is overruled.